**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAWN MARTIN<br>49 Mountain Rd.<br>Berwick, PA 18603<br><br>Plaintiff,<br>v.<br><br>COLUMBIA AIRCRAFT SERVICES, INC.<br>301 Airport Rd., Ste. 101<br>Bloomsburg, PA 17815<br><br>Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Shawn Martin (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Columbia Aircraft Services, Inc. (hereinafter "Defendant"). Plaintiff asserts violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Pennsylvania Human Relations Act ("PHRA"),[1] and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the PHRA once they are properly administratively exhausted, and his claims will mirror identically his ADA claims asserted herein.

claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Middle District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## **PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult male residing at the above-captioned address.

8. Columbia Aircraft Services, Inc. is an aircraft repair, maintenance, and service corporation, located at the above-captioned address.

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed by Defendant for approximately 3 months, from on or about September 29, 2025, until his unlawful termination (discussed further *infra*) on or about January 6, 2026.

12. Plaintiff was employed as a Machinist from Defendant's 301 Airport Road, Suite 101, Bloomsburg, PA 17815 facility.

13. In his role as Machinist, Plaintiff was directly supervised by and reported to Heather Long (hereinafter "Long").

14. During Plaintiff's employment with Defendant, Plaintiff was a dedicated employee who did not have a history of progressive discipline. Plaintiff even received a bonus for good performance on or about December 12, 2025.

15. On or about December 31, 2025, Plaintiff suffered a work-related injury/serious health condition while using a hammer to bang out brass valves.

16. Plaintiff immediately felt blood running from his hand/thumb and reported the same to Long.

17. That same day (on or about December 31, 2025), Long drove Plaintiff to the hospital, where his injury was initially treated, and he was given stitches, advised that he had a fracture, and provided with a splint to wear.

18. As a result of Plaintiff's aforesaid work-related injury/serious health condition, Plaintiff began to suffer pain and dexterity/hand mobility issues, which (at times) limited his ability to perform some daily life activities, including but not limited to grasping, lifting, and other activities that require stress to his left hand (among other daily life activities).

19. Despite Plaintiff's aforesaid health conditions and limitations, he was able to perform his job duties well; however, he (at times) required some reasonable medical accommodations.

20. For example, following Plaintiff's hospital visit on or about December 31, 2025, the doctor recommended that he perform "light duty with no heavy lifting" until seen by an orthopedic or worker's compensation doctor (a reasonable accommodation under the ADA), and he provided a doctor's note stating the same to Long after he was cleared to return to work on or about January 1, 2026.

21. Long indicated that she and management would assign Plaintiff to light duty work while he was injured, and she provided him with the information that he needed to file a worker's compensation claim.

22. Plaintiff provided a written statement for his worker's compensation claim and indicated his desire to seek further worker's compensation treatment for his work-related injury/serious health condition to Long but did not have the opportunity to complete the worker's compensation paperwork prior to his abrupt termination.

23. Nonetheless, despite that Plaintiff had been cleared to return to work on or about January 1, 2026, he was not permitted to return to work that day as Defendant purportedly needed to "work out the details" of how Plaintiff could be accommodated with light duty work.

24. Plaintiff was then referred to Defendant's workplace healthcare provider,

WorkPlace Health Bloomsburg, on or about the following Monday, January 5, 2026.

25. Following an evaluation from Defendant's worker's compensation provider he was referred to Geisinger Orthopedics ("Geisinger") for further evaluation and/or treatment.

26. Defendant's worker's compensation physician recommended that Plaintiff continue with light duty work as of January 5, 2026, as he was entirely unable to use his left hand. Plaintiff provided the doctor's note regarding his continued light duty work accommodation to Long.

27. Shortly after Plaintiff provided the doctor's note to Defendant, Defendant's Owner/President, Kelly Green (hereinafter "K. Green"), cornered Plaintiff in a hostile manner and asked Plaintiff to demonstrate how exactly his injury occurred, seemingly and baselessly skeptical that Plaintiff had really suffered work-related injuries/serious health conditions to his left hand.

28. Plaintiff thereafter reenacted how the aforementioned work-related injury/serious health condition occurred while he was performing his job duties. However, K. Green outright dismissed Plaintiffs explanation, stating that the work-related injury/serious health condition and Plaintiff's reenactment purportedly did not "line up," in a clear effort to avoid Defendant's worker's compensation and ADA obligations, including accommodating Plaintiff's light duty restrictions.

29. K. Green then accused Plaintiff of being dishonest, without any legitimate reason as to why, and refused to listen to any further explanation, despite that Plaintiff had directly been driven to the hospital by Long, ***while bleeding***, almost immediately after sustaining the aforementioned work-related injury/serious health condition.

30. ***Just one day later***, on or about January 6, 2026, Plaintiff received an email from Defendant's Human Resources ("HR") Representative, Ryan Green (hereinafter "R. Green"),

abruptly terminating Plaintiff for purportedly failing to complete his probationary period.

31. Specifically, R. Green stated only very vaguely in an attached letter to the aforesaid January 6, 2026 email that Defendant purportedly did not believe Plaintiff's account of how he sustained his work-related injury/serious health condition to be "credible," without any further explanation – in clear retaliation for Plaintiff's continued requested accommodation for light duty work – ***made just one day prior.***

32. Notably, prior to notifying Defendant of his aforesaid work-related injury/serious health condition and requested accommodations, Plaintiff had never been issued any write-ups, disciplinary action, or even warnings about his conduct or performance.

33. Prior to his abrupt termination, Defendant failed to properly accommodate Plaintiff's health conditions by terminating him ***just one day following*** his continued request for reasonable medical accommodations *(i.e.*, light duty work) and/or to prevent him from utilizing the same.

34. Based on the foregoing, Plaintiff believes and therefore avers that he was subjected to discrimination, retaliation, and terminated because of (1) his actual/perceived/record of health conditions; (2) his requested medical accommodations (*i.e.*, light duty work and/or time off for medical treatment/evaluation); (3) Defendant's failure to properly accommodate Plaintiff's health condition (set forth *supra*); and also (4) for seeking worker's compensation benefits.

35. Plaintiff also believes and therefore avers that his serious health condition was a motivating and/or determinative factor in the termination of his employment by Defendant.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff suffers from a qualifying health condition under the ADA which affected his ability (at times) to perform some daily life activities.

38. Plaintiff kept Defendant's management informed of his health condition and need for medical accommodations throughout his employment with Defendant.

39. Despite Plaintiff's aforementioned health condition and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

40. Plaintiff requested reasonable accommodations from Defendant, including but not limited to light duty work and/or time off from work for medical treatment and evaluation.

41. Defendant failed to properly accommodate Plaintiff by terminating him on or about January 6, 2026, for completely pretextual reasons, ***just one day*** after he requested the continued reasonable accommodation light duty work and/or to prevent him from utilizing the same.

42. Plaintiff believes and therefore avers that he was subjected to discrimination, retaliation, and terminated because of (1) his actual/perceived/record of health condition; (2) his requested medical accommodations (*i.e.*, light duty work and/or time off for medical treatment/evaluation); and (3) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

43. Plaintiff also believes and therefore avers that his health condition was a motivating and/or determinative factor in the termination of his employment by Defendant.

44. These aforesaid actions constitute violations of the ADA.

**Count II**
**Common-Law Wrongful Discharge**
**(Public Policy Violation)**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

47. It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See e.g., Shick v. Shirley*, 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998).

48. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination create an inference that his termination was in retaliation for making such claims. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 8, 2026